**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marylou Harbaugh,<br><br>    Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | CIV 16-02360-PHX-MHB<br><br>**ORDER** |

Pending before the Court is Plaintiff Marylou Harbaugh's appeal from the Social Security Administration's final decision to deny her claim for disability insurance benefits. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

On December 3, 2012, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, alleging a disability onset date of June 30, 2010 – later amended to June 1, 2013. The application was denied initially and on reconsideration. Thereafter, Plaintiff requested a hearing, and on September 4, 2014, she appeared and testified before the ALJ. On November 13, 2014, the ALJ issued a decision finding that Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Thereafter, Plaintiff sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

\\\

**II. STANDARD OF REVIEW**

The ALJ's decision to deny benefits will be overturned "only if it is not supported by substantial evidence or is based on legal error." Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989) (quotation marks omitted). "Substantial evidence" means more than a mere scintilla, but less than a preponderance. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"The inquiry here is whether the record ... yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." Gallant v. Heckler, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). In determining whether there is substantial evidence to support a decision, the Court considers the record as a whole, weighing both the evidence that supports the ALJ's conclusions and the evidence that detracts from the ALJ's conclusions. See Reddick, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." Gallant, 753 F.2d at 1453 (citations omitted); see Batson v. Comm'r of the Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); see Young v. Sullivan, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the Commissioner's decision, the Court must affirm it. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (quotation marks omitted).

Notably, the Court is not charged with reviewing the evidence and making its own judgment as to whether a plaintiff is or is not disabled. Rather, the Court's inquiry is

constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).

## III. THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work. See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 1, 2013 – the alleged onset date. (Transcript of Administrative Record ("Tr.") at 16.) At step two, he found that Plaintiff had the following severe impairments: multiple sclerosis and degenerative disc disease. (Tr. at 16-17.) At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the

Commissioner's regulations. (Tr. at 17.) After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(c) with the following additional limitations: she can occasionally balance, she can never climb ladders, ropes or scaffolds, and she must avoid moderate exposure to extreme heat and concentrated exposure to hazards, including unprotected heights and moving machinery."[1] (Tr. at 17-21.) The ALJ determined that Plaintiff was able to perform "past relevant work as a preschool coordinator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565)." (Tr. at 21.) Therefore, the ALJ concluded that Plaintiff has not been under a disability from June 1, 2013, through the date of his decision. (Tr. at 21-22.)

## IV. DISCUSSION

In her brief, Plaintiff contends that the ALJ erred by: (1) failing to properly consider her subjective complaints, and (2) failing to properly weigh medical source opinion evidence. Plaintiff additionally argues that (3) the ALJ erred at Step Four of the five-step sequential evaluation, and (4) the ALJ did not fully develop the record by denying Plaintiff's subpoena request.

### A. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ erred in rejecting her subjective complaints in the absence of clear and convincing reasons for doing so. Plaintiff specifically states that the ALJ failed to properly weigh her testimony related to pain and fatigue – symptoms reasonably related to her multiple sclerosis and degenerative disc conditions.

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must engage in a two-step analysis. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment

---

[1] "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 4 -

'which could reasonably be expected to produce the pain or other symptoms alleged.' The claimant, however, 'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Lingenfelter v. Astrue, 504 F.3d 1028, 1036-37 (9th Cir. 2007) (citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1037 (citations omitted). General assertions that the claimant's testimony is not credible are insufficient. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007). The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." Id. (quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)).

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see Orn, 495 F.3d at 637-39.[2] The ALJ also considers "the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; [and] functional restrictions caused by the symptoms ... ." Smolen, 80 F.3d at 1284 (citation omitted).

---

[2] With respect to the claimant's daily activities, the ALJ may reject a claimant's symptom testimony if the claimant is able to spend a substantial part of her day performing household chores or other activities that are transferable to a work setting. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). The Social Security Act, however, does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication. See id.

Plaintiff stopped work as a preschool coordinator in June of 2010, when she was laid off for economic reasons. After 2010 and through 2013, Plaintiff developed increasing symptoms from MS, most notably "extreme fatigue"; and she developed increasing "constant pain" in her neck and upper back due to co-morbid degenerative disc disease in her cervical spine (Tr. at 47, 54-55, 60-61). Plaintiff also testified to "[c]ognitive difficulties" due to MS, pain and fatigue. Plaintiff testified that she would sometimes forget what she was going to say (Tr. at 47). Plaintiff testified that she is very sensitive to heat and must avoid getting overheated (Tr. at 55). When overheated her fatigue is overwhelming (Tr. at 55). She must also limit what she does due to neck pain exacerbation, as the neck pain will travel down between her shoulder blades (Tr. at 62). To decrease her medical pain and fatigue symptoms, Plaintiff needs to recline throughout the day (Tr. at 62). She has consulted with a primary care physician and a neurosurgeon for treatment of her cervical degenerative disc disease, and the doctor opined that surgery was not a viable option (Tr. at 62). Plaintiff was limited to medication management (Tr. at 62). Physically, Plaintiff estimated that she could be on her feet for approximately 20 minutes at a time, and could sit for about 45 minutes, before needing to rest (Tr. at 63). She could lift the weight of a gallon of milk, and could not lift two gallons at the same time (Tr. at 63). She would use a cane for balance, as it made her feel more secure when walking (Tr. at 64).

In addition to her physical impairments, Plaintiff suffers from depression (Tr. at 64). She feels a general sadness and a lack of "get up and go" (Tr. at 64). She has difficulty with memory, concentration, and word finding (Tr. at 64-65). She sees a psychiatrist every three months for her depression (Tr. at 64-65). The doctor prescribes medication, which she assumes to help (Tr. at 65).

With regard to her activity level, Plaintiff was able to perform tasks such as household cleaning, and she was able to take care of her father and son. However, due to fatigue and pain, these activities were interrupted by her need to rest (Tr. at 57-58). During the day Plaintiff will rest or nap, usually in her recliner, as this is her most comfortable position (Tr. at 58-59). When taking care of her father, although not always able to nap for two hours at

a time, she did periodically "doze off" (Tr. at 59). The medical symptoms arising from MS and degenerative disc caused interference with her ability to cook and complete other tasks, so she went out to dinner almost every night (Tr. at 44). Household chores took longer to complete than they did pre-2013 (Tr. at 53). Plaintiff gave up hobbies, such as teaching and playing golf, and could no longer maintain a competitive work pace (Tr. at 50).

The ALJ found that Plaintiff's statements were "not entirely credible." The ALJ set forth two reasons for his finding. First, the ALJ stated that Plaintiff stopped working in June 2010 when she was laid off due to down-sizing. The ALJ assumes that if Plaintiff would not have been laid off, she could have kept working despite her impairments. The ALJ bases this finding on the fact that Plaintiff worked for "many years" despite her symptoms and she cared for her elderly father after being laid off. Second, the ALJ found that Plaintiff's activities of daily living conflicted with her symptom testimony. The cites to the fact that Plaintiff provided "full-time care for her father," drove herself to the hearing, and has her own vehicle.

The Court finds that neither reason given for finding Plaintiff "not entirely credible" is clear and convincing. First, the fact that Plaintiff was laid off in 2010 has no relevance to Plaintiff's credibility in this instance. Plaintiff was laid off in June 2010 – three years before her alleged onset date of June 2013. Plaintiff's statements and testimony related to her pain and fatigue demonstrate a gradual worsening during that three-year time period. And, the ALJ's statement claiming that Plaintiff worked for "many years" despite her symptoms is conclusory and speculative.

As to Plaintiff's activities of daily living, an ALJ may reject a claimant's symptom testimony if it is inconsistent with the claimant's daily activities. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). Daily activities may be grounds for an adverse credibility finding if: (1) the plaintiff's activities contradict his other testimony; or (2) the plaintiff "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." Orn, 495 F.3d at 639 (citing Fair, 885 F.2d at 603.

1    The Court fails to find Plaintiff's activities of daily living a clear and convincing
2    reason to discount her testimony. The listing of activities and implying that said activities are
3    performed consistently and regularly over an eight hour day is insufficient. Owning a car and
4    driving does not entail standing, walking, sitting, lifting, or carrying in excess of what
5    Plaintiff testified she could tolerate. Likewise, the tasks involved in caring for her father do
6    not appear inconsistent with Plaintiff's allegations. As the Ninth Circuit has stated, "we have
7    held that '[o]nly if [her] level of activity were inconsistent with [a claimant's] claimed
8    limitations would these activities have any bearing on [her] credibility.'" Garrison v. Colvin,
9    759 F.3d 995, 1016 (9th Cir. 2014) (quoting Reddick, 157 F.3d at 722); see, e.g., Vertigan v.
10   Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on
11   certain daily activities, such as grocery shopping, driving a car, or limited walking for
12   exercise, does not in any way detract from her credibility as to her overall disability. One
13   does not need to be 'utterly incapacitated' in order to be disabled.").

14   The Court notes that Defendant additionally argues that the ALJ found parts of
15   Plaintiff's statements and testimony inconsistent with the objective medical evidence.
16   Although the ALJ appears to simply list the objective medical evidence without reference
17   to Plaintiff's credibility, having reviewed the record, the Court finds that inconsistencies
18   noted in the medical record are a clear and convincing reason to discount parts of Plaintiff's
19   testimony.

20   In summary, however, the Court finds that the ALJ has failed to provide a sufficient
21   basis to find Plaintiff's allegations not entirely credible. While perhaps some inconsistency
22   with the medical evidence could arguably detract from Plaintiff's credibility, this factor
23   viewed in isolation is not sufficient to uphold the ALJ's decision to discredit Plaintiff's
24   allegations as a whole. Thus, the Court concludes that the ALJ has failed to support his
25   decision to discredit Plaintiff's credibility with specific, clear and convincing reasons and,
26   therefore, the Court finds error.

27   \\\
28   \\\

**B.     Medical Source Opinion Evidence**

Plaintiff contends that the ALJ erred by improperly weighing medical opinion evidence. Plaintiff specifically states that the ALJ failed to properly weigh the opinion of consultative physician, John Peachy, M.D.

The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability, and need not credit a physician's conclusion that the claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). But, the Commissioner generally must defer to a physician's medical opinion, such as statements concerning the nature or severity of the claimant's impairments, what the claimant can do, and the claimant's physical or mental restrictions. § 404.1527(a)(2), (c).

In determining how much deference to give a physician's medical opinion, the Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. See Lester, 81 F.3d at 830. Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. See Andrews, 53 F.3d at 1040-41; see also 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence).

If a treating or examining physician's medical opinion is not contradicted by another doctor, the opinion can be rejected only for clear and convincing reasons. See Lester, 81 F.3d at 830 (citation omitted). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole[] or by objective medical findings," Batson, 359 F.3d at 1195, or if there are significant discrepancies between the physician's opinion and her clinical records, see Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." Lester, 81 F.3d at 830-31 (citation omitted). To satisfy this

requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986). Under either standard, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, 'rather than the doctors', are correct." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).

Since Dr. Peachy's opinion was contradicted by other objective medical evidence of record, the specific and legitimate standard applies.

According to the record, on August 20, 2014, Plaintiff presented to Dr. Peachey for examination and evaluation. (Tr. at 393-96.) Dr. Peachey reviewed Plaintiff's medical records, including MRI scans of the brain and cervical spine. (Tr. at 393.) Plaintiff had aches and pains in her joints and muscles, persistent neck pain, memory problems, tiredness, and vertigo, as well as, anxiety and depression. (Tr. at 393.) Examination showed obesity at a weight of 196 pounds; tenderness over the cervical paraspinal muscles with moderately restricted ranges of motion; slightly diminished respiratory sounds at the lung bases; diffuse tenderness over the paraspinal muscles in the thoracic regions; mild paralumbar and sacroiliac joint tenderness with restricted ranges of lumbar motion; diffuse tenderness on palpation of the shoulders, arms, forearms, wrists, and hands; pain on left arm ranges of motion; pain on right leg ranges of motion; an antalgic gait secondary to joint pain; inability to perform heel and toe walking; and diminished sensation to pinprick and superficial touch in the lower extremities, more so on the right. (Tr. at 394-96.) Dr. Peachey's diagnostic impressions were of a history of MS; cervical spine degenerative joint disease; mild paresthesias; vertigo; chronic fatigue; and depression and anxiety. (Tr. at 396.)

Dr. Peachey assessed functional restrictions based on the physical examination and review of medical records. (Tr. at 397-98.) He found that, in a regular eight-hour workday, Plaintiff could sit, stand and walk for 2 hours each; that she could lift and carry more than 15 pounds but less than 20 pounds; would need to alternate between seated and standing positions every 46 to 60 minutes for 10 to 15 minutes each time; and that she could bend,

reach, and stoop on an occasional basis. (Tr. at 397.) Dr. Peachey noted that Plaintiff experiences pain, fatigue, and dizziness; that her symptoms were moderately severe; and in a work setting she would be off-task 16 percent of the day; and would likely miss work 4 to 5 days per month. (Tr. at 398.)

The ALJ afforded Dr. Peachey's opinion "less weight based on the one-time nature of the exam." The ALJ stated that "Dr. Peachey has had no other contact with the claimant since that time. Furthermore, his own objective findings, including normal motor function, normal mental status, normal reflexes and coordination, fail to support the assertion that the claimant is disabled. His opinion is further inconsistent with the greater objective record, including the objective neurological findings of Dr. Ionnatti, and with the opinions of the state agency's reviewing physicians (Ex. 13F). It is also inconsistent with claimant's acknowledged activity level." (Tr. at 20-21.)

Initially, the Court notes that Dr. Peachey's status as an examining physician is not a legitimate reason for rejecting assessed medical limitations, and his opinion was not exclusively based on a "one-time" examination – but rather his examination and review of Plaintiff's treatment records, including MRI studies of her brain and cervical spine.

Further, the ALJ's selective reliance on Dr. Peachey's findings consisting of "normal motor function, normal mental status, normal reflexes and coordination," while ignoring the rest of his opinion is not legitimate. The ALJ selectively ignores Dr. Peachey's findings, including, physical examination confirmation of obesity; tenderness over the cervical paraspinal muscles with moderately restricted ranges of motion; slightly diminished respiratory sounds at the lung bases; diffuse tenderness over the paraspinal muscles in the thoracic regions; mild paralumbar and sacroiliac joint tenderness with restricted ranges of lumbar motion; diffuse tenderness on palpation of the shoulders, arms, forearms, wrists, and hands; and pain on left arm ranges of motion, pain on right leg ranges of motion, an antalgic gait secondary to joint pain, an inability to perform heel and toe walking, and diminished sensation to pinprick and superficial touch in the lower extremities. An ALJ may not "cherry-pick[]" aspects of the medical record and focus only on those aspects that fail to

support a finding of disability. <u>Ghanim v. Colvin</u>, 763 F.3d 1154, 1164 (9th Cir. 2014); see <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1207 (9th Cir. 2001) (faulting the ALJ's selective reliance on some aspects of the treating records while ignoring other aspects suggestive of a more severe impairment).

Next, the ALJ erred in discounting Dr. Peachey's opinion as being in conflict with the opinions of neurosurgeon Christopher Ionnatti, M.D., as well as, the state agency physicians. The record reflects that Dr. Ionnatti evaluated Plaintiff as part of a neurosurgical consultation. Contrary to Dr. Peachey's assessment, Dr. Ionnatti did not render an opinion as to the combined effect of Plaintiff's impairments and did not make a comprehensive assessment of her functional limitations. As to the opinions of the state agency physicians, although the ALJ identified a conflict between the opinions of Dr. Peachey and the state agency physicians, the ALJ failed to provide analysis as to why he found one opinion more persuasive than another. The mere existence of a conflict between opinions is not a legitimate basis for favoring a reviewer's opinion over that of an examiner. See <u>Lester</u>, 81 F.3d at 830-31 (in event of conflict in the medical opinion evidence, an ALJ still must provide legally sufficient reasons to reject even an examining physician's opinion). An ALJ must specifically identify which opinion is rejected and must explain why, with citation to substantial evidence.

Lastly, the ALJ gave Dr. Peachey's opinion less weight finding it inconsistent with Plaintiff's "acknowledged activity level." The Court fails to find conflict between Plaintiff's stated activities and Dr. Peachey's opinion regarding her functional limitations. Thus, the Court finds error.

In summary, the Court finds that the ALJ failed to provide specific and legitimate reasons for affording Dr. Peachey's opinion less weight.

The Court declines to address Plaintiff's remaining arguments.

## V. CONCLUSION

Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion as true. See <u>Lester</u>, 81 F.3d at

834. Similarly, where the ALJ improperly rejects a claimant's testimony regarding her limitations, and the claimant would be disabled if her testimony were credited, "we will not remand solely to allow the ALJ to make specific findings regarding that testimony." Id. An action should be remanded for an award of benefits when the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. See Garrison, 759 F.3d at 1020. Even where these conditions are met, the court may, nevertheless, exercise "flexibility" in applying the credit-as-true rule and remand for further proceedings where remand would permit the ALJ to make specific credibility findings or otherwise resolve inconsistencies in the record. See Connett, 340 F.3d at 876. However, the Ninth Circuit has made clear that remand simply to permit the ALJ to decide the same issue again is inappropriate. See Garrison, 759 F.3d at 1021-22.

The Court finds that a remand for an award of benefits is appropriate in this case. The record is complete, and the ALJ failed to identify clear and convincing reasons for rejecting Plaintiff's credibility and failed to identify specific and legitimate reasons based on substantial evidence in the record for rejecting Plaintiff's examining physician. Crediting as true the opinion of the examining physician as well as the credibility of Plaintiff, the ALJ would be required to find Plaintiff disabled on remand.

Therefore,

**IT IS ORDERED** that the final decision of the Commissioner is vacated and this case is remanded for an award of benefits. The Clerk of Court shall enter judgment accordingly and terminate this case.

DATED this 26th day of March, 2018.

_Michelle H. Burns_
Michelle H. Burns
United States Magistrate Judge